Before we get started, may I just remind you and particularly counsel for appellants that our clocks just start from the total time allotted, that is 10 minutes or 20 minutes, and run straight down without regard to your wish to preserve time for rebuttal. So if, in fact, you want to have some time left for rebuttal, just please remember to stop talking with some time left on the clock. So having said that, we'll now hear argument in the first matter on the argument calendar on the first thing versus INS. This is the matter of Mohinder Singh, Your Honor. Yes. My name is Alan Kaufman. I'm representing the Petitioner. This case is a petition for review of the decision of the Court of Immigration Appeals denying the Petitioner's application for asylum. The Court of Immigration Appeals did not conduct an independent review of the record, and thus the Court's review is of the decision of the immigration judge. The immigration judge's decision is principally a credibility decision. In other words, the immigration judge found that the Petitioner was not credible. And I'm going to address the, what I believe to be the three main bases for the adverse credibility finding. The first is the contention that the photograph of the Petitioner at his father's funeral is inconsistent with his testimony that he received certain injuries during his arrest in 1990. First, the immigration judge notes that the photograph does not depict any lacerations to the Petitioner's face while he testified that he suffered cuts or lacerations. However, his testimony was, in fact, that he suffered one laceration to the bridge of his nose, and the photograph itself is of a profile only. So if you were to, if the cut were on the bridge of the nose and the photograph was of the profile, it wouldn't necessarily be visible. The I.J., I think, attempts to bolster that argument by noting that the Petitioner testified that his clothing was covered in blood, thus indicating that the, must have been a large cut and should have been visible in the photograph. However, the testimony was clear that the blood or the bleeding came from a nosebleed and not from the injury itself, not from the laceration. The second criticism of the photograph is it doesn't show the Petitioner's face with swelling. Again, the photograph is of a profile, and I don't know whether based on the pose itself you could see swelling to the face. Secondly, the photograph depicts the Petitioner with a full beard, which would obscure any swelling that exists. And finally, the injury occurred on January 20. The photograph was taken sometime after Petitioner's father's death on January 29, so more than nine days later, and whatever swelling may have existed probably would have diminished or gone down at the time the photograph was taken. You began your argument by saying these are the main points of adverse credibility. Did the I.J. say, categorize the adverse credibility findings by saying these are really important and these are sort of important and these are not too important, or did the I.J. simply list adverse credibility findings? I believe that the I.J. indicated that the aspect that I'm discussing now was the most important aspect of the credibility finding. The third basis was the fact that the Petitioner was not shown wearing a cast, and he testified that he was prescribed a cast for a fractured nose. First of all, there's no doubt that he has a fractured nose. He submitted a medical report from the United States with an X-ray indicating that he has a fracture. The question only is whether he suffered it during the 1990 arrest. The I.J.'s belief that, and in the photograph he's not depicted with a cast or mask, the I.J.'s belief that that device would be worn at all time is just speculation. There's no evidence in the record, medical evidence, that where one has a fractured nose, he must wear a cast at all times. And Petitioner's testimony was exactly to the contrary. He testified that he was not, or he was told he did not have to wear the cast while he ate, while he slept, that the cast was removable, and that primarily it was prescribed to be worn while he engaged in some sort of light work. I would submit that what's being described as a cast is merely a protective mask. I'm a basketball fan. You see basketball players often wearing these clear masks over their face. These are not casts. These are just devices that are used to protect someone from hitting the nose, because if there is a fracture, it's very painful. Finally, Petitioner testified that he, while he was wearing the cast or mask, he removed it at the time of his father's funeral because he knew the event was going to be photographed and he didn't want to have the memory of his father's last moments to show him wearing this device. That, I believe, the IJ indicated, was the main reason for the adverse credibility finding, the inconsistency between the testimony and the photograph. Two others, which I believe the IJ felt were important, were the Petitioner's testimony concerning, I'm sorry, the letter from the Agrawal Clinic, which was Exhibit 8 in the record. The IJ said it was inconsistent with the Petitioner's testimony that he attended his father's funeral if the letter indicated that he was treated for one month and prescribed bed rest. And I would submit that the funeral, according to the Petitioner's testimony, was two and a half hours. It's understandable that he would have attended his own father's funeral, even if he was prescribed bed rest for a fractured nose. The IJ also criticizes the letter because it's written in English, which I believe is not a valid basis since the Petitioner testified that medical documents are written in English. And I believe there are other records in the other documents in the record from India in English. The printed portion of the letter, as opposed to the written portion in English, is also in English. Finally, the Petitioner testified that he received the letter shortly before the hearing, which I would infer that indicates that he requested the letter to be used in proceedings in the United States, and therefore, it's obvious why it would be written in English. The last basis I believe was the main basis for the IJ's adverse credibility finding is the Petitioner's testimony about seeing Simranjit Mann during the 1989 election. And the IJ points out that, according to the Department of State, Simranjit Mann was in custody between April 1989 and December 1989. However, the Petitioner testified that he saw Mann on two occasions. The first was at a Gurdwara, or Sikh temple, and the IJ incorrectly indicates that the testimony was that he saw him at the temple during the election, when, in fact, the testimony was that he saw him after the election. If the election took place in November 1989 and he was released from custody in December on December 2, 1989, according to the State Department, he could have very well seen Mr. Mann at the Gurdwara after the election, as he testified. The other instance the Petitioner testified about was riding in a Jeep with Mann while he was campaigning. And, again, if he was incarcerated in April 1989, it's reasonable to infer that he may have been campaigning before he was incarcerated. In fact, maybe the fact that he was running for office was the reason that he was incarcerated. So, again ---- Counsel, I mean, you said may. I mean, you're speculating here as to what there is. Do you have any evidence to this? I mean, this is a little bit late for us to be speculating as to what may or may not be true. Well, I don't know why he was arrested. We only know that he was in custody, according to the State Department, on April 7, 1989, and the Petitioner testified about riding in a Jeep with him while he was campaigning. So I'm only saying that that is not necessarily inconsistent  That's the point I'm making, Your Honor. But your client was unable to pinpoint dates, or you can't pinpoint the exact date of the arrest. No, he can't. The IJ indicates several other bases for the adverse credibility finding, but we would submit they are very minor matters, inconsistencies about dates. One, which I found to be very astonishing, was an incorrect indication of when the 1989 election occurred. The Petitioner indicated that he did not know, and he was asked to make a guess. He guessed in the beginning of 1989, and they said, well, that's wrong. It was, according to the State Department, it was in November 1989. So I think that it's unfair to ask him to guess, and when he guesses wrong, to then say that's a basis of an adverse credibility finding. I see I have six seconds, and I want to sit down. May it please the Court. My name is Renee Rock, and I represent the Respondent Attorney General, John Ashcroft. There are two key issues in this case. The first is whether the immigration judge's adverse credibility finding is supported by substantial evidence in the record, and the second is whether Mr. Singh met his burden of proof with respect to a well-founded fear of future persecution. Could I ask just an informative, informational question, and if you know the answer, that's fine. If you don't, that's fine. Who's responsible for the accuracy of the translation of the transcript of the proceeding? I honestly don't know. Do you know if anyone, once the transcript is typed up, sits down and reads it to make sure that it's consistent with what was said at the hearing? For context, I'm actually not an immigration attorney, so I don't know that much about the process, but I don't know how the transcription process. Did you read the transcript in this case? I did, but I don't know how they go about getting authenticated, whether someone could have to. Some pretty obvious bad translations, weren't there, to be generous about it? But the parts that are clearly not bad translation are sufficient to support the immigration judge's decision. I was looking at AR-101, where the question is, so was your cousin brother, Carmageddon, was he released by the police? And the answer is, no, the poor guy had never held a rifle in his hand, but he was killed in a fast encounter of white people. Could that possibly be an accurate translation of what was said? I think it can. Mr. Singh's testimony can be construed as being nonresponsive and evasive. It's not clear that he, that the translation is bad. What is clear is that he didn't answer the question he was asked. But you would think that someone would say, wait a minute, the question, you're not responding to the question, or I don't understand your answer. And I simply don't see that. Here's one at 107. Right after the time your cousin brother Carmageddon was arrested and killed by the police, how many times do you think he helped set up for functions? Answer. Used to work on December 25 when I daily got together in the memory of the son of the guru I used to do when I worked there. How could that possibly be an accurate translation? And there's no indication in here where the judge is saying, I don't understand your answer, or are you sure you translated that correctly? Well, I think the fact that the judge later decided that his testimony was incredible and that he wasn't answering the questions in a coherent and consistent manner goes to the fact that just as you think that perhaps this was a mistranslation, maybe it isn't, and the judge noted that he wasn't answering the questions in a responsive manner. But there's no indication in the sections I've read to you where the judge said, wait a minute, either the translation is wrong or you, Petitioner, are not answering the questions in a way that I, as the finder of fact, can understand them. I don't see that anywhere. But there's also no indication that the Petitioner or his counsel at any point said, these translations are not right, this isn't what was said. There wasn't any protest on behalf of the Petitioner saying that his testimony was not accurately transcribed or by his attorney who was there and who presumably reviewed the transcript and also spoke English. Was it simultaneous translation that occurs at these hearings? As I stated, I do not know exactly how the transcription process works. I see a nod from your counsel. I'm sorry to have taken your time on this. I was just troubled reading the transcript. And there's passage after passage where the question and the answer together simply make no sense at all, including questions asked by the government. Go ahead with the argument. I'm sorry. Okay. As I stated, it's not clear that that's a mistranslation. But to move on, as Mr. Coffman stated, one of the strong evidence, like the strong record evidence that supports the immigration judge's adverse credibility finding is the inconsistent testimony with respect to the injuries he received during his January 20, 1990 arrest. Although it's true that he did testify that his cast was removable, it's also important to note that he testified both in his declaration and in his in-court testimony that he had stitches. Even if the casts had been removed, there's no reason why the stitches that were across his nose would not have appeared in the photo. Moreover, he also testified that he had a month of bed rest and was unable to move his head without pain. Yet at the same time, he was testifying about whether or not he could do work around the house, and he said he sometimes did small work around the house. Clearly those two statements are on some level contradictory. Either he was in so much pain that he could not move his head at all, or he was able to engage in light work of some sort. So the fact that he was moving around and missed his father's funeral for two hours, and there's no indication of ill health in the photo, and there's no evidence of his stitches in this photo implies that maybe the injuries that he said, the severe facial injuries and lacerations he said occurred did not actually occur. Some of the inconsistencies that the I.J. found at one point or another in his testimony, the Petitioner explained, was asked to explain the inconsistency and provided an explanation, and I could not find where the I.J. addressed those explanations. Could you? And I'm thinking about the credibility findings one, four, and six. Well, there are numerous. Let's just assume that my research is correct and the I.J. didn't do that. Doesn't our case law require the immigration judge to do that? There are numerous instances where the immigration judge states clearly that she thought that Mr. Singh was either being dishonest or disingenuous. For example, she stated that she felt that the reason why he changed the date of his arrest from May 1990 to January 20th was in order to use this photo as corroboration, which implies that she felt, judging from his testimony and his demeanor, that his explanation about why he did not have visible injuries when challenged was not true. Well, let's just take one. She said his testimony was inconsistent because in the photographs taken at the funeral, he didn't have this face mask on, and later in his testimony, he gave an explanation that he didn't want to appear unsightly, and he took it off. Now, that explanation may be valid, it may be invalid, but I couldn't find anywhere in the record where the I.J. addressed the explanation. She simply said the appearance at the funeral in the photograph without the mask is inconsistent with the description of the injuries. Nowhere does the judge address the explanation. And doesn't that violate our case law, which requires the I.J. to do that? Well, first of all, there are several material inconsistencies in Mr. Singh's testimony. The I.J. identified several of them, many of which she said, I do not believe you, I think you're disingenuous, I think you're playing games, well, I think you're being dishonest. And in totality, all of these combined, using his testimony about his injuries, the indicia of perhaps the indicia in the doctor's note that might lead one to believe that it's not authentic, the fact that he knew very little about the political party he said he campaigned in elections for. So your argument is that there are findings of adverse credibility that are sustainable by the record, and if one focuses on those, that's a basis for denying review? I do. I think that there are several sustainable issues of inconsistencies that are in this record. When you view it in total, it's clear that his testimony is inconsistent and that the I.J. made specific, cogent findings with regard to what she thought was inconsistent and why she thought or that she thought he was being dishonest are feigning testimony. Well, I seem to be running out of time, so in conclusion, I would like to point out that he did not meet his burden of proof with respect to future persecution because the Department of State report stated that the country conditions have changed, so even if it were construed that he did suffer past the conditions. We understand all of that part of the argument. So thank you very much, Mr. Cochran. Thank you. Oh, I guess not. I was going to give you another shot, but I guess you don't want to take it. That's all right. Okay. Thank you very much. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Hawkins, Bybee